# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Jesus Daniel Rodriguez-Rodriguez,<br><br>　　　　　　　Defendant. | No. CR-13-01130-1-PHX-SRB<br><br>**ORDER** |

The Court now considers the Government's Motion Under *Sell v. United States* for Hearing and Order Permitting Involuntary Administration of Medication to Restore Competency to Stand Trial ("Govt.'s Mot.") (Doc. 37 (sealed)) and Defendant's Motion to Dismiss ("Resp.") (Doc. 44 (sealed)).[1]

**I.    BACKGROUND**

Defendant, a Mexican citizen, was arrested and charged in July 2013 for illegal reentry after removal, in violation of 8 U.S.C. § 1326(a), (b)(1). (Doc. 16 (sealed), Indictment.) He had previously been removed from the United States in January 2010. (*Id.*) A few days after being charged, the Court ordered that Defendant's mental competency be evaluated. (Doc. 5, July 26, 2013 Order at 1-2.) In September 2013, physicians at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner") opined that Defendant was not competent to stand trial. (Doc. 22 (sealed), FCI-Butner Medical Evaluation at 5-6.) The next month, the Court granted Defendant's

---

[1] Defendant moved to dismiss the indictment in the same filing as his Response to the Government's Motion.

unopposed Motion to be declared incompetent and ordered further evaluation to assess Defendant's dangerousness and restorability. (Doc. 24, Hospitalization & Treatment Order ("Oct. 18, 2013 Order") at 2-3.) In April 2014, physicians at the Federal Medical Center in Butner ("FMC-Butner") opined that Defendant suffered from schizophrenia, was not a danger to himself or to others, and that there was a "substantial probability" that Defendant's competency could be restored through medication, recommending a full four-month restorative treatment plan pursuant to 18 U.S.C. § 4241. (Doc. 30 (sealed), FMC-Butner Medical Evaluation at 4, 7, 16.) Because Defendant has refused medication, the Government has moved for court-ordered involuntary medication with antipsychotics under *Sell v. United States*, 539 U.S. 166 (2003). (*See* Govt.'s Mot. at 3-8.)[2]

## II.    LEGAL STANDARDS AND ANALYSIS

### A.    Standard of Review

A criminal defendant "has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell*, 539 U.S. at 178 (quoting *Harper*, 494 U.S. at 221). The government may "medicate a defendant involuntarily for the purpose of rendering him competent to stand trial only in rare circumstances." *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 687 (9th Cir. 2010). "When the government seeks to medicate a defendant involuntarily for competency purposes, it must establish by clear and convincing evidence the four *Sell* factors." *United States v. Gillenwater*, 749 F.3d 1094, 1100 (9th Cir. 2014). Those factors are: (1) "that important governmental interests are at stake"; (2) "that involuntary medication will significantly

---

[2] The Government does not seek involuntary medication through a *Harper* order, which authorizes the government to forcibly medicate an inmate suffering from a "mental disorder" if he or she "is 'gravely disabled' or poses a 'likelihood of serious harm' to himself, others, or their property." (*Id.* at 3); *Washington v. Harper*, 494 U.S. 210, 215 (1990). Citing the FMC-Butner medical report, the Government indicates that there is no evidence suggesting that Defendant "represent[s] a threat to himself, others or the safety and security of the institution." (*Id.*) Accordingly, *Sell* provides the governing standards and the Court will not conduct a *Harper* analysis. *See United States v. Hernandez-Vasquez*, 513 F.3d 908, 915 (9th Cir. 2008) (advising a district court on remand to "note for the record its reasons for not proceeding under *Harper*[] before undertaking the *Sell* inquiry," even though the government had "disclaimed any opportunity to make a showing of dangerousness under *Harper*").

further" those interests; (3) "that involuntary medication is necessary to further those interests"; and (4) "that administration of the drugs is medically appropriate." *Sell*, 539 U.S. at 180-81. The parties have agreed to bifurcate the proceedings under the *Sell* framework, with the Court addressing the first factor through briefing alone, and if that threshold legal question is resolved in favor of the Government, conducting an evidentiary hearing to resolve the factual questions under the remaining three factors. (*See* Doc. 63, July 1, 2014 Minute Entry); *Hernandez-Vasquez*, 513 F.3d at 915-16 (describing the nature of the analysis under each *Sell* factor). If the Government cannot demonstrate that important governmental interests are at stake in continuing the prosecution, an evidentiary hearing for the other three factors is unnecessary and the analysis under *Sell* ends.

### B.  Important Governmental Interests

The government has an important "interest in bringing to trial an individual accused of a serious crime." *Sell*, 539 U.S. at 180. "That is so whether the offense is a serious crime against the person or a serious crime against property." *Id.* "To determine whether a crime is 'serious' enough to satisfy the first *Sell* factor, [a court] first consider[s] the likely Sentencing Guidelines range applicable to the defendant and then consider[s] other relevant factors." *Gillenwater*, 749 F.3d at 1101; *see also Hernandez-Vasquez*, 513 F.3d at 918 ("*Sell* is a recognition that courts must consider the facts of individual cases in evaluating the government's interest in prosecution."). Under Ninth Circuit case law, those other relevant factors can "include the time a defendant has served while awaiting trial and the possibility of future civil confinement," and if a defendant has prior convictions, "the predatory nature of those offenses[] and the closeness in time of the prior offenses to the current prosecution." *Hernandez-Vasquez*, 513 F.3d at 919.

When considered with the likely sentencing guidelines range and other relevant factors, "[u]nder some circumstances, a violation of § 1326 [for illegal reentry] may constitute a 'serious' crime sufficient to justify involuntary medication under *Sell*." *Id.*; *see also United States v. Abrego*, No. CR-11-02275-PHX-GMS, 2013 WL 551443, at *2

1. (D. Ariz. Feb. 13, 2013) ("The run-of-the-mill illegal reentry case does not fit the paradigm of a 'serious' crime."). The Government has offered two justifications for why it believes there are sufficiently important governmental interests in prosecuting this illegal reentry case. (Govt.'s Mot. at 4-6.) The first relates to a 2002 conviction for sexual battery that the Government attributes to Defendant, which involved a guilty plea that appears to have resulted in a probationary sentence. (*Id.* at 4-5; *see* Doc. 64 (sealed), United States' Req. for Judicial Notice & Submission of Docs. in Supp. of Mot. ("Govt.'s Judicial Notice Req.").)[3] The Government argues that because this prior conviction is for a crime of violence, the sentence enhancements triggered by this prior conviction makes the illegal reentry charge sufficiently serious to satisfy the first *Sell* factor. (Govt.'s Mot. at 4-6.) The second justification is that the 2002 conviction involved a crime of an "extreme predatory nature." (*Id.* at 5-6.) In supporting these two justifications, the Government asks the Court to take judicial notice of conviction documents for the 2002 offense and several police reports listing the facts underlying the sexual battery.

The Court must address the preliminary issue of what evidence it has considered. The police reports are not a proper subject of judicial notice as the facts in them "can[not] be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (*See* Doc. 64-2 (sealed), Police Reports); Fed. R. Evid. 201(b)(2). The police reports are based primarily on victim and witness reporting, and the Government does not argue that these hearsay statements fall under any recognized hearsay exception. *See United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("[E]ntries in a police report which result from the officer's own observations and knowledge may be admitted but . . . statements made by third persons under no business duty to report may not."). The Court rejects the Government's argument that hearsay should be admissible in *Sell* proceedings, an argument that analogizes the analysis under the first factor, which requires an estimate about the likely sentencing guidelines range, with sentencing

---

[3] Defendant originally stipulated that the 2002 conviction belonged to him but has since retracted that concession after reviewing the conviction documents again. (Doc. 69 (sealed), Def.'s Objection to Govt.'s Judicial Notice Req. at 4.)

proceedings where reliable hearsay may be considered. (Govt.'s Judicial Notice Req. at 4); *see* U.S. Sentencing Guidelines Manual § 6A1.3 cmt. The Government acknowledges that it has not found any case law to support its position, and the Court is unwilling to extend this rule in sentencing to an issue connected to evidentiary hearings, where the rules of evidence apply, including the rules governing hearsay. *See* Fed. R. Evid. 1101. This analysis forecloses the Government's second justification for why it has an important interest in prosecuting this case since there is no admissible evidence that the 2002 conviction involved a crime of an "extreme predatory nature."

The Court takes judicial notice of the 2002 conviction documents because they are public records falling within the scope of Federal Rule of Evidence 201(b). (*See* Doc. 64-1 (sealed), Superior Ct. of Cal., County of Santa Clara Records.) However, there is not enough information in these documents to conclusively say whether the "Daniel Rodriguez" in these records is actually Defendant. Even if there were enough information to make that finding, the sentencing enhancements resulting from that prior conviction would still be insufficient to make the illegal reentry charge sufficiently serious to satisfy the first *Sell* factor. The Government calculates a sentencing guidelines range of thirty-three to forty-one months of imprisonment when the 2002 sexual battery conviction is included in the sentencing calculus. (Govt.'s Mot. at 4 (estimating an offense level of twenty when a twelve-level crime of violence enhancement is included)); *United States v. Gallegos-Galindo*, 704 F.3d 1269, 1270, 1274-75 (9th Cir. 2013) (holding that a prior conviction for "a forcible sex offense . . . involving the absence of the victim's consent" is subject to a crime of violence enhancement).

That estimated sentencing guideline range is identical to *Gillenwater*, where the Ninth Circuit concluded that the charged offenses under 18 U.S.C. §§ 875(c) (transmitting threatening interstate communications) and 876(c) (transmitting threatening communications by mail) were serious enough to establish an important governmental interest in the defendant's prosecution notwithstanding the relatively short duration of any possible prison sentence. *Gillenwater*, 749 F.3d at 1098, 1101. Implicating far

different governmental interests than the illegal reentry charge here, the defendant was "accused of making lurid and distressing threats against a bevy of government officials and employees," including escalating threats "to, among other things, choke, rape, and kill people who serve[d] our country." *Id.* at 1101. The prosecution of illegal reentries, although serving important border enforcement objectives, cannot be said to implicate the same governmental interests found so vital in *Gillenwater*—"'to protect through application of the criminal law the basic human need for security' . . . [and] the very integrity of our system of government." *Id.* (quoting *Sell*, 539 U.S. at 180). *Gillenwater* implies that the sentencing guideline range of thirty-three to forty-one months is insufficient by itself to prove a crime is serious enough to satisfy the first *Sell* factor. The estimated sentencing guidelines range here is significantly lower than other illegal reentry cases from within the Ninth Circuit where involuntary medication has been ordered. *See, e.g.*, *Ruiz-Gaxiola*, 623 F.3d at 695 (unadjusted range of 100 to 125 months of imprisonment; adjusted range of 53 to 78 months with time served); *Abrego*, No. CR-11-02275-PHX-GMS, 2013 WL 551443, at *2 (unadjusted range of 92 to 115 months of imprisonment; adjusted range of 76 to 99 months with time served).[4]

"Special circumstances may lessen the importance" of the government's interest in prosecuting a defendant, even when serious crimes are charged. *Sell*, 539 U.S. at 180; *Gillenwater*, 749 F.3d at 1101. Some of those special circumstances are also present here. First, if Defendant is convicted at trial or through a guilty plea, any sentence would be reduced for time served, which would include the twelve months of confinement to date, plus any additional time that accrues up to a sentencing date. That additional time served

---

[4] The Court rejects the Government's reliance on out-of-circuit authority to support its argument that crimes authorizing punishments over six months are sufficiently "serious" under *Sell* to satisfy the first factor. (*See* Govt.'s Judicial Notice Req. at 3 (citing *United States v. Palmer*, 507 F.3d 300, 304 (5th Cir. 2007) (crime "serious" where fifteen to twenty-one month sentence authorized); *United States v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005) (crime authorizing fourteen to twenty months "serious" where statutory maximum is ten years)).) That authority improperly imports the definition of a "serious" offense for when Sixth Amendment jury trial rights attach to a much different context involving forcible medication, an approach that the Ninth Circuit has already rejected. *See Hernandez-Vasquez*, 513 F.3d at 918 n.5.

- 6 -

will be substantial under any reasonable estimate as an evidentiary hearing will need to be scheduled, a *Sell* order will need to be prepared and filed, and if the other *Sell* factors can be met, restorative treatment would occur over a four-month period recommended by FMC-Butner physicians. *See Sell*, 539 U.S. at 180 (explaining that "the possibility that the defendant has already been confined for a significant amount of time" is another factor in considering whether the government has an important interest in continuing a prosecution). Other sentencing reductions might also be applied, such as those agreed upon by the parties in a plea agreement or a downward departure based on diminished capacity.[5] Second, the prior conviction occurred over a decade ago. *See Hernandez-Vasquez*, 513 F.3d at 919 (listing "the closeness in time of the prior offenses to the current prosecution" as a factor that can be considered). Finally, the prior conviction resulted in a sentence of probation, suggesting that the sentencing judge did not consider Defendant a danger to the community.

## III.   CONCLUSION

The Court concludes that the Government has failed to show by clear and convincing evidence that it has sufficiently important governmental interests under the first *Sell* factor to justify involuntary medication. Although Defendant has moved to dismiss the indictment, he has not cited any authority in support of that relief, and the Court denies Defendant's Motion without prejudice. In light of the Court's ruling, the Government may decide to voluntarily dismiss this case as its options in continuing this prosecution are quite limited. The Government is instructed to file a status update no later than fourteen days from the date of this Order to apprise the Court of how it intends to proceed now that its Motion has been denied.[6]

---

[5] *Gillenwater* instructs that the possibility of supervised release is one factor that increases the government's interest in a prosecution because it ensures that a defendant will not be released into the public without appropriate monitoring. *See Gillenwater*, 749 F.3d at 1101-02. Supervised release could be ordered if Defendant was convicted but would have little significance as a practical matter because he will be deported.

[6] Most of the filings in this case are under seal, but the Court will not seal this Order. The Court has been careful to avoid including any confidential or privileged information that could prejudice the parties. The Ninth Circuit has acknowledged that

**IT IS ORDERED** denying Government's Motion Under *Sell v. United States* for Hearing and Order Permitting Involuntary Administration of Medication to Restore Competency to Stand Trial with prejudice (Doc. 37 (sealed)).

**IT IS FURTHER ORDERED** denying Defendant's Motion to Dismiss without prejudice (Doc. 44 (sealed)).

**IT IS FURTHER ORDERED** instructing the Government to file a status update no later than fourteen days from the date of this Order.

Dated this 31st day of July, 2014.

_____
Susan R. Bolton
United States District Judge

---

"motions to seal competency proceedings are very rare," and "[a]llowing public access to a competency hearing permits the public to view and read about the criminal justice process and ensure that the proceedings are conducted in an open, objective, and fair manner"—logic that clearly applies here. *See United States v. Guerrero*, 693 F.3d 990, 996, 1001 (9th Cir. 2012) (holding that a district court did not clearly err in finding a qualified First Amendment right of access to mental competency hearings).